MARINE, Collector, v. GEORGE E. BARTOL & CO., Limited.

(Circuit Court, D. Maryland. March 14, 1894.)

CUSTOMS DUTIES—CLASSIFICATION—SULPHATE OF AMMONIA—MANURES.

Sulphate of ammonia, though made exclusively from bone, is dutiable as such at half a cent per pound, under paragraph 10 of the tariff act of October 1, 1890, and cannot be admitted free of duty, under paragraph 600, as a substance "expressly used for manure," even when imported and actually used for the manufacture of fertilizers. Magone v. Heller, 14 Sup. Ct. 18, 150 U. S. 70, followed.

This was an appeal by William M. Marine, collector of the port of Baltimore, from a decision of the board of general appraisers classifying for duty 470 bags of sulphate of ammonia imported by George E. Bartol & Co., Limited.

John T. Ensor, U. S. Dist. Atty.

Robert H. Smith, for Bartol and others.

MORRIS, District Judge. The importation in this case consisted of 470 bags of sulphate of ammonia, manufactured in England, exclusively from bone, and the question is whether it should be classified under paragraph 10, as "sulphate of ammonia," at a duty of one-half a cent per pound, or should be admitted free of duty, under paragraph 600, which admits "guano, manures, and all substances expressly used for manure." It is proved that the article was imported for the purpose of being sold to manufacturers of fertilizers, and was before arrival actually sold to one, and was in fact afterwards used for that purpose, and, in combination with other substances, was manufactured into a fertilizer. It is also proved that the substance is known in commerce as "sulphate of ammonia," and that sulphate of ammonia is a commercial article, large quantities of which are used for making aqua ammonia, anhydrous ammonia, alum, nitrate of ammonia, and many ammoniacal compounds, as well as in making ammoniated fertilizers; much the larger quantity being used, not for fertilizers, but in the arts.

It is shown that there is a small difference in price between the sulphate of ammonia produced from bone and that produced from gas liquor, and that the difference arises principally from the lower percentage of pure ammonia usually found in the bone product, and also, somewhat, from an objectionable odor which the bone product retains, particularly if not carefully prepared. It thus happens that manufacturers of fertilizers, in whose goods the odor is not objected to, generally buy the bone sulphate, because it is somewhat cheaper, and the manufacturers of other preparations requiring ammonia buy the gas-liquor sulphate, because it is usually richer in ammonia, and free from bone smell.

But this is by no means invariably the case. It is proved that there is manufactured in this country large quantities of bone sulphate of ammonia so rich in ammonia and free from smell that it is largely used in all the arts, and hardly at all for fertilizers. It was testified by a witness connected with the business of one of the very largest manufacturing chemists in this country that they use sulphate of ammonia made from bone and made from gas liquor without discrimination, provided they are well made, and do not fall below the standard of 25 per cent. of ammonia, and that they were then actually using bone sulphate of ammonia in manufacturing alum when the witness was testifying. It is also proved that this particular importation was of a very high grade, containing 25.4 per cent. of ammonia (25 per cent. being the standard), and when examined by the experts was declared free from smell of bone.

There is no question that the article imported was commercial sulphate of ammonia suitable for profitable use for any ordinary uses, such as the manufacture of aqua ammonia, anhydrous ammonia, nitrate of ammonia, or alum. It depended only upon a slight difference in price, or the demands of the market, whether it should be used for one of those purposes, or for producing ammoniated fertilizers. The ruling of the supreme court in Magone v. Heller, 150 U. S. 70, 14 Sup. Ct. 18, is that, if the only common use of a substance is to manufacture it into manures, the fact that occasionally, or by way of experiment, it is used for a different purpose, will not take it out of the exemption; but if it is commonly, practically, or profitably used for a different purpose, it cannot be considered as "expressly used for manure," even if, in a majority of instances, it is so used. The words "expressly used for manure," are thus construed to mean substances, the only use of which is for making manures. In the case in hand, we have a substance widely known in commerce, used for a great many different purposes; and whether it is ultimately used for one or the other depends merely on slight differences of price or quality, and upon the judgment of the buyer. The decision of the board of general appraisers was given before the decision of the supreme court in Magone v. Heller; and the appraisers were controlled by circuit court decisions, which held that, if the substance was proved to have been actually imported and used for manufacturing fertilizers, the words "expressly used for manure" were gratified, and the substance must be admitted free, and they felt con-

strained to decide favorably to the importer. But, under the construction of the law established by the supreme court, their decision must be reversed. The substance must pay duty as sulphate of ammonia, as it is not a substance "expressly used for manure."